UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN GUSHLAW,

    Plaintiff,

v.                                                                           Case No: 8:16-cv-00256-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

    Plaintiff, John Gushlaw, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

    Plaintiff filed an application for a period of disability and disability insurance benefits on September 21, 2012. (Tr. 172–73.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 74–119.) Plaintiff then requested an administrative hearing. (Tr. 120–21.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 55–72.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 30–47.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4, 26.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

B.      **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1971, claimed disability beginning on April 1, 2012. (Tr. 33, 45, 172.) Plaintiff has a high school education. (Tr. 45.) Plaintiff's past relevant work experience includes work as a mechanical technician. (Tr. 45, 196.) Plaintiff alleged disability due to left knee pain and arthritis, torn rotator cuff, cervical disc disease, pinched nerve, fibromyalgia, sleep apnea, right knee arthritis, depression, anxiety, and a right hand injury. (Tr. 216.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 1, 2012, the alleged onset date. (Tr. 35.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: "left knee, left shoulder, degenerative disc disease, obstructive sleep apnea, right knee, and obesity." (Tr. 35.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 37.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work, except he can lift ten pounds occasionally; stand and/or walk two hours per eight-hour workday, and sit six hours per eight-hour workday, with normal breaks; occasionally climb ladders, ropes or scaffolds, and ramps or stairs; occasionally climb, balance, stoop, kneel, crouch, and crawl; occasionally reach with the left shoulder in front and/or laterally; occasionally reach overhead with the right shoulder; and must avoid even moderate exposure to hazards. (Tr. 37–38.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the

intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 42–45.) Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 45.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as systems monitor, appointment clerk, and order clerk. (Tr. 46.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 45–47.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical

criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

# ANALYSIS

Plaintiff contends that the ALJ did not properly evaluate the opinions of two physicians by failing to give controlling weight to the opinions of Dr. Drago Zanchi and Dr. Marcela Arguedas, and by failing to adequately explain his reasons for affording little weight to their opinions. (Dkt. 18 at 13.) Specifically, Plaintiff argues that the ALJ did not properly account for Dr. Zanchi's opinion regarding Plaintiff's ability to stand and walk, or Dr. Arguedas' opinion that Plaintiff could only occasionally reach, handle, finger, and feel. (Dkt. 18 at 15–18.) For the reasons that follow, these contentions do not warrant reversal.

Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, the claimant's ability to perform despite impairments, and the claimant's physical or mental restrictions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion. *Hearn v. Comm'r of Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

The medical opinions of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). Good cause exists when the doctor's opinion is not bolstered by the evidence, the evidence supported a contrary finding, or the doctor's opinion is conclusory or inconsistent with his or her own medical records. *Winschel*, 631

F.3d at 1179. The ALJ must state with particularity the weight given to different medical opinions and the reasons for the ascribed weight. *Id.* Importantly, however, while all medical opinions must be considered, including opinions regarding a claimant's RFC, a claimant's RFC is a decision "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2); *Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 877–78 (11th Cir. 2013).

### A. Dr. Drago Zanchi

Plaintiff's medical records indicate that Plaintiff received ongoing medical treatment from Dr. Drago Zanchi from 2012 to 2014 for sleep apnea and hypersomnia at Pulmonary and Sleep of Tampa Bay. (Tr. 530–37, 894–97, 963–64, 1056–59.) In April 2014, Dr. Zanchi completed a Residual Functional Capacity Questionnaire related to Plaintiff's sleep disorder. (Tr. 1056–59.) In the questionnaire, Dr. Zanchi noted Plaintiff's diagnosis of hypersomnia with sleep apnea and specified that his impairments had lasted at least twelve months. (Tr. 1056–57.) Dr. Zanchi opined that Plaintiff can do the following: continuously sit for more than two hours; stand or walk less than two hours and sit at least six hours total in an eight-hour workday with normal breaks; and frequently lift and carry less than ten pounds. (Tr. 1057.) Additionally, Dr. Zanchi opined that Plaintiff would need to rest for five minutes before returning to work, but Plaintiff's symptoms would not likely cause the need to take unscheduled breaks to rest during an average workday, and Plaintiff would be absent less than once a month. (Tr. 1058.) Dr. Zanchi further opined that Plaintiff's symptoms would rarely interfere with the attention and concentration needed to perform simple work tasks during a typical workday. (Tr. 1057.)

In his decision, the ALJ considered all the evidence and afforded Dr. Zanchi's opinion some weight. (Tr. 33, 44.) In doing so, the ALJ found that Plaintiff's sleep condition would not affect his attention and concentration, which was found to be non-severe. (Tr. 44.) Additionally,

the ALJ found that Plaintiff is "able to [stand] 2 hours per 8-hour workday and sit 6 hours per 8-hour workday." (Tr. 37, 44.) According to the ALJ, Plaintiff could therefore perform the requirements of sedentary work. (Tr. 37–38, 44.) In discussing Dr. Zanchi's opinion and treatment records, the ALJ explained as follows:

> In April 2014, Dragos Zanchi, MD completed a sleep disorder questionnaire. The claimant was diagnosed with hypersomnia with sleep apnea. Dr. Zanchi opined that the claimant's impairments lasted at least twelve months but the symptoms rarely interfered with attention or concentration needed to perform even simple tasks. The claimant was able to continuously sit for 2 hours and then needed to walk or stand for 45 minutes. The claimant was able to stand and/or walk less than 2 hours and then needed to walk or stand for 45 minutes. The claimant was able to stand and/or walk less than 2 hours and sit at least 6 hours total in an 8-hour workday with normal breaks. If the claimant needed to rest before returning to work, it would be less than 5 minutes. The claimant could frequently lift and carry less than 10 pounds and would be absent less than once a month. Lastly, Dr. Zanchi noted that the claimant's sleep disorder in combination with any other impairment was no more severe then [sic] as described above (Exhibit 47F). The undersigned affords this opinion some weight. The claimant's condition would not affect his attention and concentration, which was found to be non-severe. In addition, he was able to 2 hours per 8-hour workday and sit 6 hours per 8-hour workday, which was supported by the sedentary residual functional capacity.

(Tr. 44.)

Accordingly, while the ALJ did not afford Dr. Zanchi's medical opinion controlling weight, the ALJ considered and relied upon Dr. Zanchi's opinion in part in reaching his decision. Importantly, the ALJ explained his reasons for affording Dr. Zanchi less than substantial or considerable weight. As set forth above in the ALJ's decision, Plaintiff's condition would not affect his attention and concentration. (Tr. 44.) The ALJ also found, after considering all the evidence, that Plaintiff could stand and/or walk for two hours and sit for six hours in an eight-hour workday. (Tr. 44.)

Additionally, good cause exists for affording Dr. Zanchi's opinion less weight because Dr. Zanchi provided conclusory opinions concerning Plaintiff's limitations in walking and standing

without any supporting rationale explaining how Plaintiff's sleep apnea and hypersomnia affected Plaintiff's ability to stand and walk. Similarly, Dr. Zanchi's opinion concerning Plaintiff's limitations in standing and walking conflicts with Dr. Zanchi's opinion that Plaintiff did not exhibit recurrent daytime sleep attacks. (Tr. 1056.) Dr. Zanchi's opinion also conflicts with Plaintiff's administrative hearing testimony in which Plaintiff stated he could walk or stand approximately five hours before he had to sit down. (Tr. 63.)

Finally, Dr. Zanchi's opinion is inconsistent with the opinions of Drs. Nancy King, Maury Fisher, and Matthew Imfeld, who recommended no such restrictions. Plaintiff's medical records show that on September 27, 2010, Plaintiff received treatment from Dr. King at the Occupational Health Center for pain in his left knee. (Tr. 426–27.) Upon examination, Plaintiff was able to walk without difficulty and he had full range of motion. (Tr. 426.) Plaintiff denied that he experienced any locking, buckling, or giving way. (Tr. 426.) Dr. King opined that Plaintiff could return to work, but he could not squat, kneel, or climb. (Tr. 427.) Plaintiff could stand and walk as tolerated. (Tr. 427.)

Further, Dr. King ordered an x-ray examination for Plaintiff and Plaintiff had the x-ray examination performed on his left knee on September 28, 2010. (Tr. 432.) The x-ray results were normal. (Tr. 432.) Dr. King ordered an MRI examination for Plaintiff and Plaintiff had the MRI examination performed on his left knee on October 7, 2010. (Tr. 436.) The MRI exam showed:

> 1) There is a kissing bone bruise of the medial tibial plateau and medial femoral condyle and a large acute bone bruise of the lateral tibial plateau; 2) There is a complete tear of the femoral insertion of the popliteus muscle; 3) There is complete tear of the anterior cruciate ligament; 4) There is an oblique tear through the posterior horn of the medial meniscus; 5) There is joint effusion with a small Baker's cyst.

(Tr. 436, 437.) Dr. King diagnosed Plaintiff with having a tear of the left anterior cruciate ligament, left medial meniscus injury, and tear of the femoral insertion of the popliteus muscle.

(Tr. 436.) Dr. King opined that Plaintiff could return to work, but he could not climb, squat, or kneel, must be on solid ground, must avoid walking in gravel or mud, and could stand and walk as tolerated. (Tr. 436.) Dr. King referred Plaintiff to an orthopedist for further care. (Tr. 436.)

Thereafter, Plaintiff received orthopedic treatment from Dr. Fisher. (Tr. 345–58.) Dr. Fisher performed Plaintiff's arthroscopic left knee anterior cruciate ligament reconstructive surgery in November 2010. (Tr. 358.) After surgery, during follow-up appointments, Dr. Fisher found no instability in Plaintiff's left or right knee, normal physiological flexion and extension, no need for the use of a cane, stable left and right patella, muscle strength 5/5 in both right and left legs, and normal posture. (Tr. 347–48.) Plaintiff's knee was not "giving way" in February 2011 and he was participating in light duty. (Tr. 353.) Because Plaintiff was continuing to report pain in his left knee, and Dr. Fisher could determine no other treatment for Plaintiff, Dr. Fisher referred Plaintiff to Dr. Friedman for a second opinion. (Tr. 345, 349, 372–74.)

In his examination of Plaintiff on May 16, 2011, Dr. Friedman found no instability in Plaintiff's knee, found no clinical basis for using a cane, and that Plaintiff "is clearly able to work, at the very least in a light duty capacity." (Tr. 373.) Dr. Friedman recommended that Plaintiff be restricted to a "sit down job" and opined Plaintiff could walk 15 minutes per hour. (Tr. 373.) Dr. Friedman recommended no squatting, climbing, kneeling, jumping, running, or crawling. (Tr. 373.) He also recommended no pushing or pulling over 15 pounds, no lifting below the waist level, or lifting over 15 pounds. (Tr. 373.) Dr. Friedman recommended independent exercise and weight loss for Plaintiff. (Tr. 345, 373.)

Dr. Fisher agreed with Dr. Friedman's findings and recommendations. (Tr. 345.) Dr. Fisher discharged Plaintiff from further treatment on October 11, 2011, concluding that he had reached maximum medical improvement concerning his left knee. (Tr. 376.) Dr. Fisher also

opined that Plaintiff could not squat, kneel, climb, or lift over 20 pounds. (Tr. 376.) Although Dr. Fisher noted that Plaintiff has degenerative changes in his knee, Dr. Fisher did not otherwise provide recommended restrictions for Plaintiff's walking, standing, or sitting. (Tr. 376.)

Plaintiff also received treatment from Dr. Imfeld at Central Florida Physiatrists from November 2011 through April 2012. (Tr. 457–64.) Dr. Imfeld noted that Plaintiff had normal strength in his knee extensors, and was able to balance on his left and right foot, and walk heel to toe with both feet although Plaintiff felt more comfortable using a cane. (Tr. 463.) Dr. Imfeld recommended anti-inflammatory medication and restrictions including no stooping, squatting, climbing, or lifting over 20 pounds. (Tr. 463.) He recommended a health club membership to keep Plaintiff's left knee strengthened and weight loss to decrease pressure on the left knee. (Tr. 463.)

Accordingly, good cause existed to discount Dr. Zanchi's opinion concerning Plaintiff's limitations in standing and walking because it was conclusory, inconsistent with his other findings, and inconsistent with the evidence in the record, and this determination was supported by substantial evidence. *Crawford*, 363 F.3d 1159 (affirming the ALJ's decision to discount a treating physician's opinion because it was "inconsistent with [the treating physician's] own treatment notes, unsupported by the medical evidence, and appear[ed] to be based primarily on [claimant's] subjective complaints of pain"). Plaintiff's contention, therefore, does not warrant reversal.

**B.     Dr. Marcela Arguedas**

Plaintiff also challenges the weight the ALJ afforded to Dr. Marcela Arguedas' medical opinion. Plaintiff received medical treatment from Dr. Arguedas on December 12, 2012, for pain and a hematoma in his right calf. (Tr. 724–26, 729–31.) Dr. Arguedas instructed Plaintiff to elevate his leg and to take Tylenol as needed. (Tr. 729.) Dr. Arguedas completed a

"treating/examining medical source statement" on December 12, 2012, and opined as follows: Plaintiff's lifting and carrying are affected by his chronic neck pain and radiculopathy; his ability to stand and walk are affected because of left lower extremity weakness and knee pain; Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl; Plaintiff's reaching, handling, feeling, and pushing/pulling are limited due to radiculopathy and left shoulder rotator cuff injury; Plaintiff should avoid heights and moving machinery because of limited range of motion and radiculopathy; and Plaintiff must elevate his feet when sitting, change position, and alternate between sitting and standing. (Tr. 724–26.) Dr. Arguedas opined that Plaintiff's ability to sit was not affected by his impairments. (Tr. 725.) According to the medical source statement, the medical findings that support plaintiff's allegations include: "cervical radiculopathy (MRI 2011); rotator cuff syndrome, left (notes from Dr. Ahmann); Left lower extremity pain, chondromalacia patella (MRI 2010)." (Tr. 726.) Ultimately, Dr. Arguedas concluded that Plaintiff would be unable to sustain employment for eight hours a day, five days a week. (Tr. 726.)

In his decision, the ALJ afforded Dr. Arguedas' opinion "some weight." (Tr. 43.) In doing so, the ALJ relied on evidence showing full motor strength in all extremities, normal gait, almost full flexion with the left lower extremity, full flexion with the right lower extremity, full flexion with the back and hips with normal range of motion, and improvement with range of motion and joint mobility of the left ankle and foot. (Tr. 44.) Additionally, the ALJ acknowledged that diagnostic studies showed decreased range of motion with the right shoulder, mild degenerative changes of the cervical spine, and degenerative changes in the lower lumbar spine. (Tr. 44.) In light of this, the ALJ limited the claimant to sedentary work. (Tr. 43–44.)

The ALJ is not required to assign controlling weight to the opinion of a treating physician who examined a claimant only twice. *Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x

693, 698 (11th Cir. 2006) (ruling that the ALJ did not err by failing to accord a physician's opinion controlling weight where physician treated claimant only twice after the alleged onset date, as the physician did not have a longstanding relationship with claimant). Here, the ALJ was not required to defer to Dr. Arguedas' opinion, as it was an opinion rendered by a physician who examined Plaintiff only twice in 2012—once in July 2012 for an ingrown toenail-related issue (Tr. 525) and once in December 2012 for pain in his right calf (Tr. 729–31). *See Heppell-Libsansky*, 170 F. App'x at 698; *Beegle v. Comm'r of Soc. Sec.*, 482 F. App'x 483, 489 (11th Cir. 2012) (finding that the ALJ was not required to defer to a physician's opinion because the physician only examined the claimant on a single occasion and did not treat him); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians").

Additionally, Dr. Arguedas' opinion regarding Plaintiff's reaching, handling, feeling, and pushing/pulling are inconsistent with Plaintiff's medical records. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (explaining that the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion). First, within weeks of Dr. Arguedas' medical opinion, the physicians at Bartow Regional examined Plaintiff and found that his motor strength was 5/5 in all extremities. (Tr. 545, 553, 830.) Next, Dr. Arguedas' opinion conflicts with Dr. John Amann's opinion, in which he opined that Plaintiff's strength was acceptable and reasonable. (Tr. 498.) Dr. Amann recommended only conservative treatment options and did not provide any recommended limitations for Plaintiff's activities. (Tr. 499.) Further, Dr. Arguedas' opinion is also inconsistent with the medical opinion and records of Dr. Anthony Shydohub who opined that Plaintiff's left median, ulnar and radial nerves, both motor and sensory, were normal. (Tr. 468.) He also opined that Plaintiff's distal and proximal muscles of his left upper extremity were also normal. (Tr. 468.)

Finally, Plaintiff's treatment records from Lakeland Regional, Bartow Regional, Dr. Avantica Gondi, and Dr. John Cotton do not show that any physicians recommended such limitations of Plaintiff's activities. Accordingly, Plaintiff's contention concerning Dr. Arguedas' opinion is without merit because her opinions were not entitled to great weight, and, nonetheless, the ALJ's decision to accord her opinion some weight was proper because the opinion was contradicted by other record medical evidence.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on February 16, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record